## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANTONIO FIDELIS VALIENTE, On Behalf of Himself and All Others Similarly Situated, | |
| 9108 Charred Oak Drive Bethesda, Maryland 20817, | Docket No. <u>08-CV-2416 KHV/DJW</u> |
| Plaintiff, | **COMPLAINT — CLASS ACTION** |
| v. | COMPLAINT FOR: |
| DINEEQUITY, INC., | (1) VIOLATIONS OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961, *et seq.* |
| 450 N. Brand Blvd., 7th Floor Glendale, California 91203-4415, | |
| APPLEBEE'S INTERNATIONAL, INC., d/b/a APPLEBEE'S NEIGHBORHOOD GRILL & BAR, | (2) VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT, K.S.A. § 50-624, *et seq.* |
| 11201 Renner Blvd. Lenexa, Kansas 66219, | (3) VIOLATIONS OF COMMON LAW |
| WEIGHT WATCHERS INTERNATIONAL, INC., | |
| 11 Madison Ave., 17th Floor New York, New York 10010, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

Antonio Fidelis Valiente ("Valiente" or "Plaintiff"), on behalf of himself and all others similarly situated alleges the following, based on information and belief:

### NATURE OF THE ACTION

1.     This action arises from fraud perpetrated on consumers across the country who have ordered and paid for entrees listed on the "healthy menus" at Applebee's Neighborhood

Grill & Bar. Defendants deliberately provided false nutritional information to customers by inaccurately representing the caloric and fat content of the food at issue.

2.      Obesity in the United States has reached epidemic proportions. It is estimated that 130 million Americans are overweight. Obesity can cause chronic disease, disability, type II diabetes, heart disease, congestive heart failure, stroke, and even death.

3.      To combat the growing list of maladies associated with obesity, many consumers have turned to weight loss programs and a healthier diet. As consumers' health consciousness has grown, they have increasingly relied on nutritional information published by weight loss programs and restaurants in making healthier choices while dining outside the home.

4.      This trend in healthier eating has lead to a fast-growing market for healthier foods. To take advantage of this emerging market, some restaurants have created "healthy" menus or sections of menus in order to advertise dishes that are "healthier" – that is, lower in fat or calories – than other dishes at the restaurant. These healthy menus frequently include nutritional information, including fat and calorie content.

5.      Instead of participating honestly in the emerging healthy-foods market, some restaurants, including those owned, operated and/or franchised by Defendants DineEquity, Inc. ("DineEquity") and Applebee's International, Inc. ("Applebee's") have lied to and taken advantage of consumers seeking a healthier dining option. Defendants have done so by intentionally, knowingly, and/or recklessly misrepresenting in a material fashion the amount of fat and calories found in the dishes on their so-called "healthy" menus.

6.      DineEquity and Applebee's have contracted with Defendant Weight Watchers International, Inc. ("Weight Watchers") to offer a "Weight Watchers® Menu" that purports to provide healthier fare. The Weight Watchers® Menu lists the purported fat, calorie, and fiber

content of each dish, as well as the number of Weight Watchers® "Points." Points are calculated based on fat, calorie, and fiber content.

7.      Testing has shown that the nutritional data for the Weight Watchers® Menu published by DineEquity, Applebee's, and Weight Watchers materially misrepresents the actual fat and calorie content – and therefore the number of Weight Watchers® Points – of each dish. For example, although the menu advertises the "Cajun Lime Tilapia" as containing 6 grams of fat and 310 calories, this dish actually contains over twice as much fat (14.3 grams) and 25% more calories (401) than advertised.

8.      Defendants Applebee's, DineEquity, and Weight Watchers distribute misleading and fraudulent information about the Weight Watchers Menu by interstate wires. Defendants Applebee's and DineEquity maintain a website advertising the Weight Watchers Menu. Weight Watchers markets the Weight Watchers Menu through its website, books, and brochures distributed at meetings.

9.      Plaintiff Valiente has frequented Applebee's several times over the past four years since the creation of the Weight Watchers® Menu. On at least half of those occasions, Valiente purchased dishes from the Weight Watchers® Menu in reliance on the menu's representations regarding the fat and calorie content of the dish. Valiente did not know that these representations were false, and since learning that they are, he has stopped eating at Applebee's.

10.      Valiente and those similarly situated relied on those misrepresentations and as a result were fraudulently induced by Defendants to purchase dishes that contained materially more fat and calories than Defendants had represented.

11.      Defendants formed an enterprise, with which they were and are associated, and conducted the affairs of that enterprise through a pattern of racketeering activity, in violation of

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Plaintiff and those similarly situated were damaged in their property by reason of Defendants' RICO violation.

12.     The conduct of Defendants also constitutes (1) a deceptive act and practice as defined by Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.* ("KCPA"); and (2) unjust enrichment under Kansas common law.

13.     Accordingly, Plaintiff, on behalf of himself and those similarly situated, seeks all relief to which he is entitled, including treble damages, equitable relief, restitution, injunctive relief, statutory civil penalties and reasonable costs and attorneys' fees as provided for under 18 U.S.C. § 1964(c); K.S.A. §§ 50-634(d) and (e); and established principles of common law.

## PARTIES TO THE ACTION

14.     Plaintiff Valiente resides at 9108 Charred Oak Drive, Bethesda, Maryland 20817. Valiente is a "consumer" within the meaning of section 50-624(b) of the KCPA, and brings this action on behalf of himself and those similarly situated.

15.     Defendant Applebee's and its affiliates franchise and operate restaurants under the name "Applebee's Neighborhood Grill & Bar." Applebee's is a wholly-owned subsidiary and brand of DineEquity, and has its principal place of business at 11201 Renner Boulevard, Lenexa, Kansas 66219. Applebee's is a "supplier" within the meaning of section 50-624(j) of the KCPA.

16.     Defendant DineEquity currently owns, operates, and/or franchises all Applebee's full service restaurants located throughout the United States and has owned, operated, and/or franchised all Applebee's restaurants since November 2007. DineEquity is incorporated in Delaware and has its principal place of business at 450 North Brand, Glendale, California 91203. DineEquity is a "supplier" within the meaning of section 50-624(j) of the KCPA.

17.     Defendant Weight Watchers is a purveyor of weight management services and licenses the trademark Weight Watchers. Weight Watchers is incorporated in Virginia and has its principal place of business at 11 Madison Avenue, 17th Floor, New York, New York 10010. Weight Watchers is a "supplier" within the meaning of section 50-624(j) of the KCPA.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under RICO, 18 U.S.C. § 1964(c). This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from the states of which Defendants are citizens. On information and belief, more than two-thirds of the class members will be citizens of a state other than Kansas.

19.     This Court has personal jurisdiction over Applebee's because Applebee's has its principal place of business in Kansas and does business in Kansas. This Court has personal jurisdiction over DineEquity and Weight Watchers under 18 U.S.C. § 1965(b) and the Kansas long-arm statute, K.S.A. 60-308(b).

20.     Venue is proper in the District of Kansas under 18 U.S.C. § 1965(a) and (b) because Applebee's has its principal place of business within the District. Venus also is proper under 28 U.S.C. § 1391(b)(2) because Applebee's principal place of business is located within the District and a substantial part of the events and omissions giving rise to the claims at issue occurred there.

## FACTUAL ALLEGATIONS

A.  **Defendants Formed an Enterprise To Offer and
    Advertise a "Weight Watchers® Menu" at Applebee's.**

21.     DineEquity owns, operates, and/or franchises 1,976 Applebee's restaurants.
There are, on information and belief, over 35 Applebee's restaurants in Kansas.

22.     In the summer of 2003, Defendant Applebee's entered into a "multi-year
agreement with Weight Watchers" in order "to offer guests a credible and healthy way" to enjoy
food while dining out.  This agreement was a multi-year licensing contract between Applebee's
and Weight Watchers, which Applebee's and Weight Watchers touted as the first "partnering" of
a "weight-loss program and major national restaurant chain."  The Weight Watchers website
states that Weight Watchers has a "partnership" with Applebee's with respect to the development
of the "Weight Watchers® Menu" at Applebee's.  *See* Weight Watchers, "Marketplace"
<http://www.weightwatchers.com/shop/categoryshowcase.aspx?pageid=1055431&navid=morew
w> <last visited Aug. 21, 2008>.  Upon information and belief, Defendant DineEquity has
maintained this contract with Weight Watchers since purchasing Applebee's in November 2007.

23.     Defendant Applebee's began offering the "Weight Watchers® Menu" at all of its
Applebee's locations in May 2004.  At that time, Defendants Applebee's and Weight Watchers
acknowledged that three out of four Americans are concerned about eating right and that the
addition of a Weight Watchers® Menu was in response to the "real need for healthier menu
options."  Defendant Applebee's also acknowledged that customers choose Weight Watchers®
Menu options because of the "healthy" nature of those items.

24.     For example, in a joint press release from Defendants Applebee's and Weight
Watchers, Applebee's chief marketing officer, John Cywinski, stated that Applebee's had "made
a commitment to improve [its] healthy fare offerings . . . ."  In the same press release, Steve

Marlowe, General Manager of Licensing for Weight Watchers, stated that "Weight Watchers members learn how to eat healthfully, exercise, and handle the challenges encountered to achieve and maintain weight loss. We know how important it is to find healthy and satisfying food choices in a casual dining restaurant setting."

25. Defendants Applebee's and DineEquity market the Weight Watchers® Menu as being a healthier alternative to the standard menu at Applebee's, and specifically market to customers who rely on accurate information regarding the fat content, calorie content, and "Weight Watchers® Points" contained in a meal. For example, the Applebee's website (www.applebees.com), which is accessed by means of interstate wires, states the following about its Weight Watchers® Menu:

> Whether you're following the Weight Watchers® *POINTS*®
> Weight-Loss System, or simply looking for alternatives when
> you're eating out, you'll love these ten Applebee's menu items.

Applebee's: Weight Watchers®, http://www.applebees.com/Menu_WW.aspx (slide 5 of 5).

26. Applebee's also lists the caloric and fat content of the items on the written Weight Watchers® Menu on the menus distributed to each customer visiting an Applebee's restaurant. The current Weight Watchers® Menu advertises the following items:

| Item | Fat Grams | Calories | Weight Watchers® Points |
|---|---|---|---|
| Tortilla Chicken Melt | 13 | 480 | 10 |
| Onion Soup au Gratin | 8 | 150 | 3 |
| Chocolate Raspberry Layer Cake | 3 | 230 | 4 |
| Cajun Lime Tilapia | 6 | 310 | 6 |
| Item | Fat Grams | Calories | Weight Watchers® Points |
| Italian Chicken & Portobello Sandwich | 6 | 360 | 7 |
| Steak & Portobellos | 10 | 330 | 7 |

| Grilled Chili-Lime Chicken Salad | 6 | 250 | 5 |
| Teriyaki Steak 'N Shrimp Skewers | 7 | 370 | 7 |
| Confetti Chicken | 7 | 370 | 7 |

*See* Weight Watchers® Menu (attached hereto at Exhibit 1).

27.     Each Applebee's restaurant has the same or substantially the same menu, which is available online at http://www.applebees.com/Menu_WW_static.aspx.  The menus all contain identical or substantially identical representations about the caloric and fat content of the items on the Weight Watchers® Menu.  Because the representations are provided in writing, they are uniform at all or substantially all Applebee's restaurants.

28.     The representations made in the menu are distributed to all customers each time they eat at an Applebee's and have been provided on a daily basis for the past four years.  The representations on the website are made to customers each time the customer logs onto the website and have been provided on a daily basis for the past four years.

29.     Weight Watchers similarly markets the Weight Watchers Menu.  The Weight Watchers website, which is accessed by means of interstate wires, advertises Applebee's as a Weight Watchers "product" under the "Marketplace" tab, in the section that asks consumers to "Browse Our Products":

> Looking for **foods and tools** to help you meet your **weight-loss goals**?  You can always count on the quality and value of these products from Weight Watchers, **available where you already shop.** . . . .
>
> Browse our products: . . . .→ **Applebee's**

"Marketplace," <http://www.weightwatchers.com/shop/index.aspx> (last visited Aug. 21, 2008) (emphasis in original).  The Website also asserts that the Weight Watchers® Menu at Applebee's will allow members to "stay on [their] Weight Watchers plan":

> Weight Watchers is proud to announce that Applebee's restaurants are featuring nine delicious Weight Watchers menu items. With *POINTS*® values for each tempting dish provided right on Applebee's menu, it's easier than ever to eat out and stay on your Weight Watchers plan.
>
> Developed in partnership with Weight Watchers, each of Applebee's menu items features the great freshly prepared tastes that have made Applebee's famous. From delectable appetizers to hearty entrées and dessert, they're delicious Weight Watchers foods you'll love that will love you back. And they're only at Applebee's. Weight Watchers menu items are available at participating locations in the U.S.A.

"Marketplace: Applebee's," <http://www.weightwatchers.com/shop/categoryshowcase.aspx?pageid=1055431&navid=moreww> (last visited Aug. 21, 2008). These written representations are made uniformly to every Weight Watchers member and every consumer that consults the Weight Watchers website. Upon information and belief, these representations have been made on a daily basis for the past four years.

30.     Weight Watchers also advertises the Applebee's Weight Watchers® Menu in written publications distributed at Weight Watchers meetings, at which Weight Watchers employees discuss weight loss with Weight Watchers customers. For example, advertisements for and representations about the Weight Watchers® Menu are contained in the "Dining Out Companion," a Weight Watchers publication that lists the Weight Watchers® Points for various restaurant meals, and in the "Complete Food Companion," another Weight Watchers publication. These brochures include the menu items and Weight Watchers® Points for each meal based on its fat and calorie content. Further, these brochures advertise that "Applebee's is the only restaurant where you'll find Weight Watchers menu items . . . . Choose from a wide variety of delicious options and stay on target while enjoying a meal out."

**B.    Defendants' Representations Regarding Fat and
Calorie Content, Made Through the Use Of Interstate Wires,
Are Fraudulent, False, and Misleading.**

31.    Defendants materially misrepresent the amount of fat and calories in the items

listed on the Weight Watchers® Menu.

32.    In 2008, an independent laboratory tested several dishes listed on the Weight

Watchers® Menu and found that the listed items actually contained calorie contents far greater

than the amount advertised and fat contents up to three times greater than the amount advertised.

33.    For example, Defendants have represented that the Cajun Lime Tilapia dish from

the Weight Watchers® Menu contains 6 grams of fat, 310 calories, and 6 Weight Watchers®

Points.  Laboratory tests, however, showed that the Cajun Lime Tilapia dish actually contains

12.7 to 14.3 grams of fat, approximately 400 calories, and 8 or 9 Weight Watchers® Points.  :

| Item | Advertised Fat Grams | Actual Fat Grams | Advertised Calories | Actual Calories | Advertised Weight Watchers® Points | Actual Weight Watchers® Points |
|------|------|------|------|------|------|------|
| Cajun Lime Tilapia (1st test) | 6 | 12.7 | 310 | 399 | 6 | 8 |
| Cajun Lime Tilapia (2nd test) | 6 | 14.3 | 310 | 401 | 6 | 8-9 |

34.    As another example, the menu advertises several items that actually contain two

or three times the amount of fat grams advertised:  Italian Chicken & Portobello Sandwich

(falsely advertised at 6 grams, actually contains 18.6 grams); Garlic Herb Chicken (falsely

advertised at 6 grams, actually contains 18 grams); Steak & Portobellos (falsely advertised at

10 grams, actually contains 19.6 grams).

## C.    Plaintiff and All Others Similarly Situated
Paid for Goods They Never Received.

35.    Plaintiff Valiente has eaten at Applebee's restaurants in the Miami, Boston, Nashville, and Washington, D.C. metropolitan areas at least twenty-five times since the Defendants began using the Weight Watchers® Menu.

36.    Approximately half of the times he has eaten at Applebee's, Valiente selected entrees from the Weight Watchers® Menu. He specifically ordered items from the Weight Watchers® Menu in reliance on the menu's written representations about the caloric and fat content of the dishes.

37.    Plaintiff and the other class members (as defined below) were part of the target audience to which Defendants marketed the Weight Watchers® Menu by knowingly or recklessly making materially false and fraudulent representations regarding the calories, fat content, and number of Weight Watchers® Points in these dishes.

38.    Plaintiff Valiente and the other class members (as defined below) relied on the Defendants' materially false and fraudulent representations regarding the calories, fat content, and number of Weight Watchers® Points in these dishes. As a result, Plaintiff Valiente and the other class members have suffered ascertainable losses, damages, and injury to their property, including (but not limited to) the price paid for the falsely and fraudulently advertised meals.

# CLASS ACTION ALLEGATIONS

39.     This action is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure.

## Description of Class

40.     The "Class" is defined as follows:

> All persons who ordered from and purchased a meal from the Weight Watchers® Menu at Applebee's between September 5, 2004 and September 5, 2008. Specifically excluded from this Class are DineEquity, Inc., Applebee's International, Inc., Weight Watchers International, Inc., and all of their subsidiaries, parents, and other affiliates, all officers, directors, and employees of these entities, and all legal representatives, heirs, and assigns of these entities. Also excluded are any judicial officers who preside over this action and any juror that participates in this lawsuit.

## Numerosity and Impracticability of Joinder (Rule 23(a)(1))

41.     Although the precise number of Class members is unknown, upon information and belief, the Class is so numerous that joinder of all members is impracticable. There are almost 2,000 Applebee's restaurants nationwide – in all fifty states and the District of Columbia – and each restaurant offers the same Weight Watchers® Menu. Millions of consumers across the nation, residing in many different states, frequent Applebee's. And, upon information and belief, hundreds of thousands of those consumers have ordered items from the Weight Watchers® Menu that was fraudulently advertised. Discovery of records maintained by the Defendants will enable the Plaintiff to determine class size more precisely.

42.     It would be impractical for each consumer to file an individual lawsuit against Defendants based on their fraudulent acts. According to the Weight Watchers® Menu available on the Applebee's and Weight Watchers websites, each dish on the Weight Watchers® Menu costs between $3.99 and $9.99. Thus, each individual's damages would be far less than the cost of pursuing an individual action against Defendants.

## Commonality (Rule 23(a)(2))

43.    This case arises from Defendants' knowing or recklessly false, material representations about the Weight Watchers® Menu, which Defendants made uniformly throughout the country to the general public, including to Plaintiff Valiente and the proposed Class members. Defendants have acted in ways that affect all members of the proposed Class similarly.

44.    There are central questions of fact and law that are common to the Class as a whole, including (but not limited to) the following:

a)    whether Defendants made materially false representations that the items on the Weight Watchers® Menu contained a certain fat content, calorie content, and number of Weight Watchers® Points;

b)    whether these representations were made intentionally, knowingly, and/or recklessly;

c)    whether Defendants represent to consumers that the items on the Weight Watchers® Menu have characteristics, ingredients, uses, benefits, or quantities that they do not have;

d)    whether Defendants represent to consumers that the items on the Weight Watchers® Menu are of a particular standard, quality, or grade when in fact they differ materially from that representation;

e)    whether Defendants used interstate wires in furtherance of a scheme to fraud;

f)      whether Defendants violated RICO by conducting, or participating in the

conduct of, the affairs of an enterprise through a pattern of racketeering

activity;

g)      whether Plaintiff and the Class members were injured in their property by

reason of Defendants' violations of RICO;

h)      whether Defendants violated the KCPA by committing the acts alleged

above;

i)      whether Defendants violated the common law by receiving and unjustly

retaining a benefit at the expense of Plaintiff and the other Class members;

j)      whether Plaintiff and other Class members are entitled to damages as a

result of Defendants' actions; and

k)      whether Plaintiff and the other Class members are entitled to injunctive

relief.

## Typicality (Rule 23(a)(3))

45.     Plaintiff's claims are typical of the claims of the proposed Class. Like the

members of the proposed Class, Plaintiff ordered and purchased items from the Weight

Watchers® Menu, which is uniform throughout the country. Those items contained a higher fat

and calorie content, and therefore a higher Weight Watchers® Point value, than Defendants

represented to the Plaintiff and other Class members. Defendants knowingly or recklessly made

uniform, written, and materially false representations to Plaintiff and the other Class members on

their websites, advertising materials, and menus throughout the country. Plaintiff and other

Class members relied on those misrepresentations, which caused Plaintiff and other Class

members to purchase items from the Weight Watchers® Menu.

46.     Defendants' actions prevented Plaintiff and each Class member from receiving the food for which they paid.  Thus, Plaintiff and each Class member was wronged by the same offending conduct, and proof of Plaintiff's claims will similarly prove the claims of all other members of the Class.

## Fair and Adequate Representation (Rule 23(a)(4))

47.     Plaintiff will fairly and adequately protect the interests of the Class, because his claims are common to and typical of the claims of all Class members, and proof of Plaintiff's claims will prove the claims of all Class members.  Plaintiff's interests are in harmony with the interests of other members of the Class, and none of Plaintiff's interests is adverse to those of other Class members.

48.     Plaintiff will pursue this litigation vigorously.  He selected as his counsel Gilbert Randolph LLP, Bartimus, Frickleton, Robertson & Gorny, P.C., SimmonsCooper LLC, and Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP, law firms experienced in complex litigation that have served as class counsel in other consumer protection matters.

## Class Certification is Appropriate Under Rule 23(b)(2)

49.     Defendants seek declaratory and injunctive relief under RICO and the KCPA. Defendants have acted on grounds generally applicable to the Class in that Defendants uniformly have misrepresented the fat, calories, and Weight Watchers® Points of dishes on the Weight Watchers® Menu to all Class members.  Thus, declaratory and injunctive remedies are appropriate with respect to the potential Class as a whole, making class certification appropriate under Rule 23(b)(2).

## Class Certification is Appropriate Under Rule 23(b)(3)

50.     Class certification also is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over individual questions and a class action is a superior vehicle for addressing Defendants' conduct.

*Predominance*:

51.     Questions of law and fact that are common to Plaintiff and the Class predominate over questions affecting only individual members, in accordance with Rule 23(b)(3).  For example, the common issues of law and fact identified in paragraph 44, *supra*, predominate over issues unique to individual Class members.

*Superiority*:

52.     A class action is the superior method for adjudicating the claims of Plaintiff and the Class.  Individual Class members will be reluctant to pursue individual actions because each Class member's damages will be far less than the cost of pursuing an individual action.

53.     A class action also is superior because Defendants' actions towards Plaintiff and the Class members were identical, in that Defendants uniformly misrepresented the amount of fat, calories, and Weight Watchers® Points in the dishes on its Weight Watchers® Menu.  The adjudication of the claims of each member of the Class would result in thousands of needlessly repetitive trials on essentially the same issues (*e.g.*, the representations made by the Defendants, their falsity and materiality, and the Defendants' state of mind).  Thus, the disposition of the claims of Plaintiff and the other Class members in a class action will provide substantial benefits to the parties and the Court, because a class action will promote the orderly and expeditious administration and adjudication of the Class members' claims, foster economies of time, effort, and resources, and ensure uniformity of decisions.

54. Plaintiff knows of no other difficulties that may be encountered in the management of this litigation.

## JURY TRIAL DEMANDED

55. Plaintiff hereby demands a trial by jury of all issues so triable.

### COUNT I
### Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)

56. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55.

57. Defendants Applebee's and Weight Watchers formed an "enterprise" within the meaning of 18 U.S.C. § 1961(4) by entering into a licensing agreement and partnership in the summer of 2003. Defendant DineEquity joined the enterprise in November 2007.

58. Defendants conducted or participated in the conduct of this enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

59. The pattern of racketeering activity consisted of multiple acts of mail fraud and wire fraud in violation of 18 U.S.C. § 1343. In particular, Defendants engaged in a scheme to defraud Plaintiff and the other members of the Class of money or property by making false representations of material facts to Plaintiff and the other members of the Class regarding the fat content, calorie content, and Weight Watchers® Points of items on the Weight Watchers® Menu, on which Plaintiff and the other members of the Class relied and which caused Plaintiff and the other members of the Class to purchase such items.

*Mail fraud*:

60. On information and belief, from August 2004 to the present, Defendant Applebee's has used the mail in furtherance of that scheme. Specifically, on many occasions from August 2004 to the present, Applebee's has caused written menus to be sent through the

mails to Applebee's restaurants around the nation. On each menu, Applebee's has intentionally, knowingly, and recklessly misrepresented material facts regarding the fat content, calorie content, and Weight Watchers® Points of dishes on the Weight Watchers® Menu.

61.     On information and belief, from November 2007 to the present, Defendant DineEquity has used the mail in furtherance of that scheme. Specifically, on many occasions from November 2007 to the present, DineEquity has caused written menus to be sent through the mails to Applebee's restaurants around the nation. On each menu, DineEquity has intentionally, knowingly, and recklessly misrepresented material facts regarding the fat content, calorie content, and Weight Watchers® Points of dishes on the Weight Watchers® Menu.

62.     On information and belief, from August 2004 to the present, Defendant Weight Watchers has used the mail in furtherance of that scheme. Specifically, on many occasions from August 2004 to the present, Weight Watchers has caused written brochures and pamphlets to be sent through the mails to various locations in the United States for use and distribution at Weight Watchers informational meetings that Weight Watchers members attend to gain information about the Weight Watchers eating program. Each of these brochures and pamphlets contained intentional, knowing, and reckless misrepresentations of material facts regarding the fat content, calorie content, and Weight Watchers® Points of dishes on the Weight Watchers® Menu.

    *Wire Fraud:*

63.     On information and belief, from August 2004 to the present, Defendant Applebee's has used the interstate wires in furtherance of that scheme. As described above in paragraphs 31-34, Applebee's intentionally, knowingly, and recklessly misrepresents material facts regarding the fat content, calorie content, and Weight Watchers® Points of dishes on the Weight Watchers® Menu. Specifically, on the "Weight Watchers" tab of its website,

Applebee's states that the dishes on the Weight Watchers® Menu specifies the number of fat grams, calories, and Weight Watchers® Points contained in each dish. *See* Applebee's, "Weight Watchers Menu," http://www.applebees.com/Menu_WW.aspx. On information and belief, Defendant Applebee's has made these or substantially similar fraudulent statements regarding the nutritional information of the Weight Watchers® Menu on its website every day for the last four years.

64.     On information and belief, between November 2007 and through today, Defendant DineEquity used and uses the interstate wires in furtherance of that scheme. As described above in paragraphs 31-34, DineEquity intentionally, knowingly, and recklessly misrepresents material facts regarding the fat content, calorie content, and Weight Watchers® Points of dishes on the Weight Watchers® Menu. Specifically, DineEquity's website advertises Applebee's as one of its "Brands" under the "Brands" tab. That webpage advertises the "Applebee's" logo and is a link to the Applebee's website and therefore to the fraudulent statements made on the Applebee's website. Upon information and belief, Defendant DineEquity has approved, ratified, and adopted all statements made on the Applebee's website, including the fraudulent statements described in paragraphs 31-34 above, and therefore is responsible for the content of those statements.

65.     On information and belief, from August 2004 to the present, Defendant Weight Watchers has used the interstate wires in furtherance of that scheme. As described above in paragraphs 31-34, Weight Watchers has intentionally, knowingly, and recklessly misrepresented material facts regarding the number of Weight Watchers® Points of dishes on the Weight Watchers® Menu. Specifically, on the "Marketplace" tab of the Weight Watchers website, in the section that asks consumers to "Browse Our Products," Weight Watchers lists the Weight

Watchers® Points contained in each dish on the Weight Watchers® Menu, which are based on the fat and calorie content of the dishes. *See* Weight Watchers, "Applebee's," http://www. weightwatchers.com/shop/categoryshowcase.aspx?pageid=1055431&navid=moreww. As described above in paragraphs 31-34, these statements are fraudulent. Moreover, by virtue of the agreement between Weight Watchers and Applebee's, Weight Watchers is responsible for Applebee's uses of the mail and interstate wires in furtherance of the fraud.

66.     Defendants' multiple acts of mail fraud and wire fraud constituted a pattern of racketeering activity because Defendants committed more than two acts of racketeering activity within a 10-year period, and these acts were continuous (in that they occurred on a daily basis and lasted over a period of at least four years) and related (in that they shared a common goal — the defrauding of Plaintiff and the other members of the Class).

67.     Plaintiff and the other Class members have suffered injury in fact and have lost money or property by reason of Defendants' violation of 18 U.S.C. § 1962(c), in that they purchased items they would not have purchased but for Defendants' violation of RICO.

68.     Because of Defendants' violation of RICO, an action for treble damages, injunctive relief, and appropriate attorneys' fees is specifically authorized by 18 U.S.C. 1964. Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

## COUNT II
## Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)

69.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 68.

70.     In violation of 18 U.S.C. § 1962(d), Defendants conspired to conduct, or participate in the conduct of, the affairs of an enterprise through a pattern of racketeering activity consisting of multiple acts of mail fraud and wire fraud.

71.    In particular, Defendants agreed among themselves to conduct, or participate in the conduct of, the affairs of the enterprise described above in paragraph 57 through the pattern of racketeering described above in paragraphs 59-66.  In furtherance of that conspiracy, Defendants committed numerous overt acts, including the uses of the interstate wires and mail described above in paragraphs 60-65.

72.    Plaintiff and the other Class members have suffered injury in fact and have lost money or property by reason of Defendants' violation of 18 U.S.C. § 1962(d), in that they purchased items they would not have purchased but for Defendants' violation of RICO.

73.    Because of Defendants' violation of RICO, an action for treble damages, injunctive relief, and appropriate attorneys' fees is specifically authorized by 18 U.S.C. 1964. Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

## COUNT III
## Violation of the Kansas Consumer Protection Act — K.S.A. § 50-626(b)(1)(A)

74.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 73.

75.    Under section 50-626(b) of the KCPA, it is unlawful for a supplier to engage in a deceptive act or practice in connection with a consumer transaction.  Under section 50-626(b)(1)(A), a "deceptive act or practice" includes making representations that a good has "characteristics, ingredients, uses, benefits or quantities" that it does not have.

76.    As set forth in paragraphs 31-34 above, Defendants uniformly represented to Plaintiff and Class members that the items on the Weight Watchers® Menu contained a certain stated amount of fat, calories, and Weight Watchers® Points.

77.    The advertised amounts of fat, calories, and Weight Watchers® Points in the items on the Weight Watchers® Menu were false and misleading.  Contrary to Defendants'

representations, the fat content, calorie content, and number of Weight Watchers® Points in these items were materially higher than advertised. The items did not have the characteristics, ingredients, or quantities that had been advertised.

78.     Plaintiff and the other Class members relied on Defendants' false and misleading statements in ordering and paying for the items on the Weight Watchers® Menu and purchased goods that they would not otherwise have purchased, thereby losing money. Plaintiff and the other Class members were likewise denied the full value of the items they purchased. Accordingly, Plaintiff and the other Class members have suffered injury in fact and have lost money or property as a result of Defendants' false and misleading representations.

79.     Based on the foregoing facts, Defendants' practices were deceptive acts or practices within the meaning of section 50-626 of the KCPA and were violations of that section.

80.     An action for declaratory relief, injunctive relief, damages, statutory civil penalties and reasonable attorneys' fees is specifically authorized by section 50-634 of the KCPA. Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

## COUNT IV
### Violation of the Kansas Consumer Protection Act — K.S.A. § 50-626(b)(1)(D)

81.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 80.

82.     Under section 50-626(b) of the KCPA, it is unlawful for a supplier to engage in a deceptive act or practice in connection with a consumer transaction. Under section 50-626(b)(1)(D), a "deceptive act or practice" includes making representations that a good is of a "particular standard, quality, [or] grade" if the "particular standard, quality, [or] grade" of the good differs materially from the representations.

83.     As set forth in paragraphs 31-34 above, Defendants uniformly represented to Plaintiff and Class members that the items on the Weight Watchers® Menu contained a certain stated fat content, calorie content, and number of Weight Watchers® Points.

84.     The advertised fat content, calorie content, and number of Weight Watchers® Points in the items on the Weight Watchers® Menu were false and misleading. Contrary to Defendants' representations, the fat content, calorie content, and number of Weight Watchers® Points in these items were materially higher than advertised. The items were not of the standard, quality, or grade advertised.

85.     Plaintiff and the other Class members relied on Defendants' untrue or misleading statements in ordering and paying for the items on the Weight Watchers® Menu and purchased goods that they would not otherwise have purchased, thereby losing money. Plaintiff and the other Class members were likewise denied the alleged value of the items they purchased. Accordingly, Plaintiff and the other Class members have suffered injury in fact and have lost money or property as a result of Defendants' false and misleading representations.

86.     Based on the foregoing facts, Defendants' practices were deceptive acts or practices within the meaning of section 50-626 of the KCPA and were violations of that section. An action for declaratory relief, injunctive relief, damages, statutory civil penalties and reasonable attorneys' fees is specifically authorized by section § 50-634 of the KCPA. Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

### COUNT V
### Civil Conspiracy

87.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 86.

88.     Defendants agreed and conspired to engage in deceptive acts and practices in violation of section 50-626 of the KCPA by engaging, on multiple occasions, in the false and misleading advertising of the fat content, calorie content, and number of Weight Watchers® Points of items on the Weight Watchers® Menu.

89.     In so conspiring, Defendants acted with a unity of interest and with the agreed-upon aim of inducing Plaintiff and the other members of the Class to purchase items listed on the Weight Watchers® Menu.

90.     In furtherance and as part of their conspiracy, each Defendant distributes the false and misleading advertising on a daily basis through the Internet and through written materials. Specifically, each Defendant maintained during the Class period, and continues to maintain, a website containing and/or ratifying the false and misleading advertising.  Defendants Applebee's and DineEquity distributed during the Class period, and continue to distribute, the false and misleading advertising through menus available at Applebee's restaurants nationwide. Defendant Weight Watchers marketed during the Class period, and continues to market, the false and misleading advertising through books and brochures that are distributed at Weight Watchers® informational meetings.

91.     Each Defendant committed acts in furtherance of the conspiracy, and/or lent aid and encouragement to their co-conspirators, and/or ratified and adopted the acts of their co-conspirators, and is thus jointly and severally liable for all harm to Plaintiff resulting from the conspiracy.

92.     Plaintiff and the other Class members relied on Defendants' untrue or misleading statements in ordering and paying for the items on the Weight Watchers® Menu and purchased

goods that they would not otherwise have purchased, thereby losing money. Plaintiff and the other Class members were likewise denied the alleged value of the items they purchased.

93. Accordingly, Plaintiff and the other Class members have suffered injury in fact and have lost money or property as the direct and proximate result of Defendants' conspiracy. Wherefore, Plaintiff prays judgment against Defendants, as set forth hereafter.

## COUNT VI
## Unjust Enrichment

94. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 93.

95. In Kansas, a defendant is unjustly enriched when it has taken receipt of a benefit and unjustly retained the benefit at the expense of another.

96. As set forth in paragraphs 31-34 above, Defendants uniformly represented to the Plaintiff and Class members that the items on the Weight Watchers® Menu contained a certain stated amount of fat and calories and Weight Watchers® Points. The benefit to Defendants Applebee's and DineEquity of these representations was the sale of items from the Weight Watchers® Menu. The benefit to Defendant Weight Watchers of these representations was a successful licensing agreement and a portion of the proceeds.

97. By engaging in the conduct described in this Complaint, Defendants have been unjustly enriched by their sale of items from the Weight Watchers® Menu and by engaging in fraudulent and deceptive conduct to persuade Plaintiff and the other Class members that the Weight Watchers® Menu has the advertised amount of fat and calories.

98. As a proximate result of Defendants' unlawful, fraudulent, and unfair conduct, Defendant has obtained revenues by which it became unjustly enriched at the expense of Plaintiff and other Class members. Under the circumstances alleged herein, it would be unfair and

inequitable for Defendants to retain the profits they have unjustly obtained at the expense of Plaintiff and the Class.

99. Accordingly, Plaintiff seeks an order establishing Defendants as constructive trustee of the profits that served to unjustly enrich them, together with interest during the period in which Defendants have retained such funds, and requiring Defendants to disgorge those funds to Plaintiff and the other Class members in a manner to be determined by the Court.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff, individually and for all others similarly situated, respectfully requests that this Court:

I. Certify the Class as defined in this Complaint;

II. Order Defendants to notify each and every member of the Class of the pendency of the claims in this action in order to give such persons an opportunity to seek relief;

III. Enjoin Defendants from engaging in conduct that violates RICO and the KCPA, as defined in this Complaint;

IV. Enter a judgment in favor of Plaintiff and the Class on Count I (RICO) and award treble damages, costs, and attorneys' fees under 28 U.S.C. § 1964(c);

V. Enter a judgment in favor of Plaintiff and the Class on Count II (RICO) and award treble damages, costs, and attorneys' fees under 28 U.S.C. § 1964(c);

VI. Enter a judgment in favor of Plaintiff and the Class on Counts III to IV (KCPA) and award damages, costs, and attorneys' fees under K.S.A. § 50-634(e), the Common Fund Doctrine, or other applicable law;

VII.    Enter a judgment in favor of Plaintiff and the Class on Counts IV (Civil Conspiracy) and V (Unjust Enrichment), award restitution, costs, and attorneys' fees under the Common Fund Doctrine or other applicable law;

VIII.    Create a common fund comprised of all damages and restitution to Class members; and

IX.    Award such other relief as this Court may deem to be just, proper, and equitable.

Dated:  September 9, 2008                Respectfully submitted,

                                         By:    /s/ James P. Frickleton
                                             James P. Frickleton (Kansas Bar No. 20602)

                                         BARTIMUS, FRICKLETON,
                                           ROBERTSON & GORNY, P.C.
                                         11150 Overbrook Road, Suite 200
                                         Leawood, KS  66211
                                         T: (913) 266-2300
                                         F: (913) 266-2366
                                         E: jimf@bflawfirm.com

SIMMONSCOOPER LLC                        GILBERT RANDOLPH LLP
Kenneth J. Brennan*                      August J. Matteis, Jr.*
    kbrennan@simmonscooper.com               matteisa@gilbertrandolph.com
707 Berkshire Blvd., PO Box 521          Mark A. Packman
East Alton, IL 62024                         packmanm@gilbertrandolph.com
T: (618) 259-2222                        Alyson A. Foster*
F: (618) 259-2251                            fostera@gilbertrandolph.com
                                         Tara M. Kelly*
HANLY CONROY BIERSTEIN                        kellyt@gilbertrandolph.com
SHERIDAN FISHER & HAYES LLP              1100 New York Avenue, NW, Suite 700
Andrea Bierstein*                        Washington, DC 20005
    abierstein@hanlyconroy.com           T: (202) 772-2200
112 Madison Avenue                       F: (202) 772-1924
New York, NY 10016-7416
T: (212) 784-6403                        *  Application for Admission Pro Hac Vice
F: (212) 784-6420                           to be filed

                 *Attorneys for Plaintiff Antonio Fidelis Valiente*