## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SHEREE SHEPARD | ) | |
| on behalf of Herself and All Others | ) | |
| Similarly Situated, | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 08-2416-KHV |
| DINEEQUITY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Anthony Watts and Sheree Shepard assert putative class action claims against DineEquity, Inc., Applebee's International, Inc. and Weight Watchers International, Inc. for alleged violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c) and (d), the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-626(b)(1)(A) and (D), and civil conspiracy to violate the KCPA and unjust enrichment. See First Amended Complaint (Doc. #42) filed February 4, 2009. This matter comes before the Court on defendants' Motion to Dismiss Complaint on Grounds of Federal Preemption (Doc. # 51), Motion to Dismiss for Failure to State a Claim Regarding Alleged RICO Violations (Doc. # 54), Motion to Dismiss State Law Claims and to Strike Civil Penalties Demand (Doc. # 56) and Motion to Dismiss Weight Watchers International, Inc. (Doc. # 58), all filed February 27, 2009 and Defendants' Supplemental Request For Judicial Notice In Support Of Their Motion To Dismiss No. 1 (Federal Preemption) (Doc. #70) filed May 6, 2009.

## Legal Standards

In ruling on defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines

whether they plausibly give rise to an entitlement of relief.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

(2009).[1]  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state

a claim which is plausible – and not merely conceivable – on its face.  Id.; Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007).   In determining whether a complaint states a plausible claim

for relief, the Court draws on its judicial experience and common sense.  Iqbal, 129 S. Ct. at 1950.

The Court need not accept as true those allegations which state only legal conclusions.  See

id.; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Plaintiffs bear the burden to frame their

complaint with enough factual matter to suggest that they are entitled to relief; it is not enough for

them to make threadbare recitals of a cause of action accompanied by mere conclusory statements.

Twombly, 550 U.S. at 556.  Plaintiffs make a facially plausible claim when they plead factual

content from which the Court can reasonably infer that defendants are liable for the misconduct

alleged.  Iqbal, 129 S. Ct. at 1949.  Plaintiffs must show more than a sheer possibility that defendants

have acted unlawfully – it is not enough to plead facts that are "merely consistent" with liability.

Id. (citing Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic

recitation of the elements of a cause of action, or naked assertions devoid of further factual

enhancement, will not stand.  Iqbal, 129 S. Ct. at 1949.  Similarly, where well-pleaded facts do not

permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged

– but not "shown" – that the pleader is entitled to relief.  Id. at 1950.

**Factual Background**

---

[1]      The Supreme Court decided Iqbal on May 18, 2009, after the briefing in this case.
Changes in procedural law have retrospective effect, however, unless Congress specifically dictates
otherwise or a manifest injustice is created.  Merchants Nat. Bank v. Safrabank,  776 F.Supp. 538,
540 (D. Kan. 1991).  None of the parties have submitted supplemental briefing on this issue, and
Iqbal is not dispositive of any issue now before the Court.

DineEquity, Inc. is a Delaware corporation with its principal place of business in Glendale, California.  See Amended Complaint (Doc. # 42) filed February 4, 2009 at 5.  DineEquity purchased Applebee's in November of 2007, and Applebee's is now a wholly-owned subsidiary.  Id. Applebee's and its affiliates operate restaurants under the name Applebee's Neighborhood Grill & Bar.  Id.  Weight Watchers operates weight management centers and licenses the trademarks WEIGHT WATCHERS and *POINTS*.  Id. at 6.

In the summer of 2003, Applebee's entered into a multi-year agreement with Weight Watchers whereby the two corporations partnered to promote healthy dining alternatives using WEIGHT WATCHERS and *POINTS* trademarks on the Applebee's menu.  Id. at 6.  In May of 2004, Applebee's began offering a Weight Watchers menu at all of its restaurants.  Id. at 6.  Since 2007, DineEquity has continued the contract with Weight Watchers.  Id. at 6.

On its web site and restaurant menus, Applebee's provides information about fat, calories and Weight Watchers *POINTS*  for each dish on the Weight Watchers Menu.[2]  Id. at 8.  Weight Watchers also advertises the Weight Watchers Menu on its web site and provides information about fat, calories and *POINTS* in brochures for program participants.  Id. at 9-10.

In reliance on defendants' claims regarding fat, calories and *POINTS*, Sheree Shepard and Anthony Watts purchased and consumed items from the Applebee's Weight Watchers Menu.  Id. at 12.  Plaintiffs were part of the target audience to which defendants marketed the Weight Watchers Menu.  Id. at 13.  Shepard, a Weight Watchers member since March of 2008, has eaten at Applebee's restaurants in the "Kansas City area" and elsewhere.  She did so about 50 times between

---

[2] *POINTS* are calculated based on fat, calorie and fiber content.  Amended Complaint (Doc. # 42) at 8.

February 4, 2008 and February 4, 2009.  Id. at 12.  Every time, she selected an entree from the Weight Watchers Menu.  Watts has eaten at Applebee's in the "Kansas City area" approximately 30 times in the last year and purchased a dish from the Weight Watchers Menu approximately 24 times.  Id. at 13.  In 2008, plaintiffs sent several dishes from the Weight Watchers Menu to an independent laboratory and found that the listed items contained a higher calorie content and up to three times the amount of fat advertised.  Id. at 11.  Plaintiffs allege that defendants materially misrepresented the fat, calories and *POINTS* in items on the Weight Watchers Menu.  Id. at 2.

Plaintiffs allege that defendants distributed the misleading Weight Watchers Menu and brochures through the mail and by interstate wires through the Internet.  Id. at 3, 19.  Applebee's and DineEquity each maintain a web site which provides fat, calories and *POINTS* for items on the Weight Watchers Menu.  Id. at 3, 9.  These web sites have provided this information continuously for the last four years.  Id. at 9.  Weight Watchers also provides *POINTS* for each dish on the Weight Watchers Menu on its web site.  Id. at 3, 9.

## Plaintiffs' Claims

Plaintiffs proceed on behalf of themselves and all persons who purchased a meal from the Weight Watchers Menu at Applebee's between September 5, 2004 and September 5, 2008.  Amended Complaint (Doc. # 42) at 13.  Count I alleges that defendants violated RICO, 18 U.S.C. § 1962(c), by forming an enterprise within the meaning of 18 U.S.C. § 1961(4) and conducting a pattern of racketeering activity.  Id. at 18.  Count II alleges that defendants conspired to violate RICO.  Id. at 22.  Count III alleges that defendants represented that some of their products had characteristics, ingredients, uses, benefits or quantities that they did not have and that defendants

4

thereby committed a deceptive act or practice in violation of K.S.A. § 50-626(a).[3] Count IV alleges that defendants represented that some of their products are of a particular standard or quality, that their quality differs materially from the representations and that defendants therefore committed a deceptive act or practice in violation of K.S.A. § 50-626(a). Id. at 24. Count V alleges that defendants advertised false and misleading information through the Internet and written materials, and thus conspired to engage in deceptive acts and practices in violation of K.S.A. § 50-626(a). Id. at 25. Finally, Count VI alleges that because defendants induced sales by false information, they were unjustly enriched. Id. at 26.

**Analysis**

**I.      Federal Preemption**

Defendants allege that to the extent that plaintiffs seek to impose obligations beyond those imposed by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 301 et seq., the federal statute preempts plaintiffs' state law claims (Counts III, IV, V and VI).[4] Plaintiffs argue that state law imposes a standard which is equivalent to the NLEA standard, and that preemption is therefore no bar. See Plaintiffs' Consolidated Opposition To Defendants' Motion To Dismiss

---

[3]      K.S.A. § 50-626(a) provides that "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction."

[4]      In support of their federal preemption arguments, defendants ask the Court to take judicial notice of five documents relating to that issue: (1) the FDA Food Labeling Guide (April 2008), (2) the FDA brief as amicus curiae in New York State Restaurant Ass'n v. New York City Board of Health (NYSRA), 556 F.3d 114 (2d. Cir. 2009), (3) an excerpt from FDA, Questions and Answers, Volume II, A Guide for Restaurants and Other Retail Establishments, (4) a selection of the Congressional record of the 101st Congress and (5) United States Patent No. 6,040,531 (March 21, 2000). See Defendants' Supplemental Request For Judicial Notice In Support Of Their Motion To Dismiss No. 1 (Federal Preemption) (Doc. #70) filed May 6, 2009. Defendants' motion is sustained.

5

(Doc. # 64) filed April 6, 2009 at 11. Alternatively, plaintiffs argue that the complaint already contains sufficient allegations to put defendants on notice of a claim that the nutritional representations for the Weight Watchers Menu lacked a reasonable basis and that the NLEA does not apply to Weight Watchers *POINTS* at all. Id.

The Federal Food, Drug and Cosmetic Act ("FDCA") prohibits misbranding of food. See N.Y. State Restaurant Ass'n v. N.Y. City Board of Health (NYSRA), 556 F.3d 114, 118 (2d. Cir. 2009). In 1990 Congress passed the NLEA, Pub.L. No. 101-535, 104 Stat. 2353 (1990), which sought to strengthen the authority of the Food and Drug Administration ("FDA"), require nutrition labeling on foods and establish circumstances under which nutritional claims may be made. See id. Two sections of the NLEA (and their related preemption provisions) are germane to this analysis.

Section 343(q) of the NLEA, which is entitled "nutrition information," provides that food shall be deemed to be misbranded if its label does not bear nutrition information which provides the serving size, number of servings, number of calories derived from any source, number of calories derived from fat and amount of various nutrients (including fat), vitamins and minerals. Section 343(q) primarily applies to packaged food that must include a Nutrition Facts Panel on its packaging. It does not apply to food which is served in restaurants, however, so restaurants do not have to attach Nutrition Facts Panels to the food which they serve. See Section 343(q)(5)(A)(i).[5] For food which is subject to Section 343(q), Section 343-1(a)(4) expressly preempts any state or local requirements that are not identical to Section 343(q), except a requirement for nutrition

---

[5]       Section 343(q)(5)(A)(i) provides that subparagraphs (1), (2), (3) and (4) of Section 343(q) shall not apply to food "which is served in restaurants or other establishments in which food is served for immediate human consumption or which is sold for sale or use in such establishments . . . ."

labeling of food which is exempt under Section 343(q)(5)(A)(i), i.e. the restaurant exception.

Section 343(r), entitled "[n]utrition levels and health-related claims," addresses voluntary information that a food purveyor may choose to add to a product label about the nutrient content or health benefits of its products. See NYSRA, 556 F.3d at 123. Restaurants are not exempt from Section 343(r), so when a restaurant chooses to make nutrition or health-related claims, it must conform to Section 343(r). Id. Section 343(r) prohibits the use of terms which characterize the level of any nutrient unless the terms conform to FDA definitions. It also requires that claims about any relationship between nutrients and health conditions be supported by scientific consensus. 21 C.F.R. § 101.14(c). The FDA will authorize a health claim only when it determines that there is significant scientific agreement among experts qualified by scientific training and experience that the claim is supported by such evidence. Id. In evaluating nutrient content claims in restaurant food, compliance should be determined using analytical testing methods described in 21 C.F.R. § 101.9. See 21 C.F.R. § 101.13(o). In lieu of analytical testing, compliance may be determined using a reasonable basis for concluding that food meets the definition for a particular claim. 21 C.F.R. § 101.13(q)(5)(ii). The reasonable basis may derive from recognized data bases for raw and processed foods, recipes and other means to compute nutrient levels in the foods or meals, provided that reasonable steps are taken to ensure that the method of preparation adheres to the factors on which the reasonable basis was determined (e.g., types and amounts of ingredients, cooking temperatures, etc.). Id. Section 343-1(a)(5) expressly preempts state and local requirements regarding nutrient content claims that are not identical to Section 343(r), except requirements respecting claims which

7

are exempt under Section 343(r)(5)(B), i.e. the restaurant exemption.[6]  In short, because the NLEA does not regulate "nutrition information" labeling on restaurant food, states and localities are free to adopt their own rules.  Id.  On the other hand, because the NLEA regulates "nutrition levels and health-related claims" on restaurant foods, states may only adopt rules that are identical to those provided in the NLEA.  NYSRA, 556 F.3d at 120; id.[7]

To decide whether the NLEA preempts plaintiffs' claims, the Court must first determine whether defendants' statements with regard to fat, calories and *POINTS* are "nutrition information" or "nutrition levels and health-related" claims.  The Second Circuit Court of Appeals has addressed this precise issue, in a comprehensive and well reasoned opinion which this Court hereby adopts. See NYSRA, 556 F.3d at 114.  The Second Circuit, in a case of first impression among the circuits, articulated a two-part test for determining whether statements by a restaurant are "nutrition information" under Section 343(q) or "nutrient content claims" under Section 343(r).  Adopting the FDA interpretation of "a series of agency regulations that sometimes appear to conflict and are

_____

[6]        21 U.S.C. § 343-1(a)(5) provides as follows:

(a) Except as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce –

(5) any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title, except a requirement respecting a claim made in the label or labeling of food which is exempt under section 343(r)(5)(B) of this title.

Section 343(r)(5)(B) exempts food served in restaurants or other establishments in which food is served for immediate human consumption or which is sold for sale or use in such establishments.

[7]        Congress clearly has the power to preempt state law.  Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372, 120 S. Ct. 2288 (2000).

difficult to harmonize," 556 F.3d at 117, the Second Circuit held that a restaurant statement is "nutrition information" if (1) it is of the type required by Section 343(q) and (2) a state or municipal regulatory authority requires the statement to be disclosed as part of nutrition labeling with regard to restaurant food.  556 F.3d at 130-31.

In this case, plaintiffs do not allege that any state or local authority required defendants to disclose the fat, calories or *POINTS* of any items on the Weight Watchers Menu.  Therefore, applying the Second Circuit's test, the Court finds that defendants' statements are nutrition content claims rather than nutrition information.  As nutrition content claims, defendants' statements fall squarely within the scope of 21 U.S.C. § 343-1(a)(5), which preempts states from adopting nutrient claim requirements which differ from those imposed by Section 343(r).[8]

Under FDA regulations, defendants may justify their nutrition content claims through analytical testing or other bases including recognized databases.  Defendants argue that plaintiffs' claims must fail because they rely almost entirely on analytical testing and do not address whether defendants' claims were reasonable or supported by recipes, databases, calculations or other

---

[8]        Following, New York State Restaurant Ass'n v. New York City Board of Health, 556 F.3d 114 (2d. Cir. 2009), the Superior Court of California has held that where a restaurant makes a voluntary disclosure about a nutrient, that disclosure is a "nutrient content claim" under Section 343(r).  Jones v. DineEquity, Inc., No. RG-08391858, at *2 (Alameda County, California, Apr. 9, 2009).

As to *POINTS*, plaintiffs argue that "although the number of *POINTS* depends on fat, calories and fiber, the number of *POINTS* does not actually qualify as a representation as to the 'level of any nutrient' in the item."  See Plaintiffs' Motion For Leave To File Sur-Reply In Opposition To Defendants' Motion To Dismiss No. 1 (NLEA Preemption) (Doc. #76) filed May 29, 2009 at 4.  Under 21 C.F.R. § 101.13(b)(1), however, "[a]n expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'"  *POINTS* apparently represent a combination of several different nutrient values, see Amended Complaint (Doc. #42) at 3, and they therefore fall under Section 343(r).

information.  21 C.F.R. § 101.13(q)(5)(ii).  The Court agrees.  Because plaintiffs seek to impose a standard which is not identical to that identified in Section 343(r), the Court grants defendants' motion to dismiss on grounds of federal preemption.

## II.	Failure To State A RICO Claim

Plaintiffs allege that defendants committed multiple acts of mail and wire fraud by making false representations of material facts regarding fat, calorie and *POINTS* in Applebee's dishes.  See First Amended Complaint (Doc. #42) at 19.   Plaintiffs allege that defendants Applebee's and Weight Watcher's formed an "enterprise" within the meaning of 18 U.S.C. § 1961(4) by entering into a licensing agreement and partnership in the summer of 2003; that DineEquity joined the enterprise in November of 2007; and that defendants conducted their enterprise through a pattern of racketeering activity (multiple acts of mail and wire fraud), in violation of 18 U.S.C. § 1962(c). Plaintiffs allege that they suffered injury in fact because they purchased food which they would not have purchased but for defendants' RICO violation.

Defendants seek dismissal, arguing that plaintiffs have not alleged facts which justify a RICO claim.  Specifically, defendants argue that (1) plaintiffs do not plead fraud with particularity as required by Rule 9(b); (2) plaintiffs do not allege a RICO enterprise or a RICO injury; and (3) plaintiffs do not state a conspiracy claim under Section 1962(d).  See Defendants' Motion to Dismiss Alleged RICO Violations (Doc. # 54) filed February 27, 2009.

As authorized by 18 U.S.C. § 1964(c), RICO provides a private right of action for treble damages to any person injured in his business or property by reason of a violation.  Bridge v. Phoenix Bond & Indemnity Co., 128 S. Ct. 2131, 2141 (2008).  The elements of a civil RICO claim are (1) conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity.  18 U.S.C. §

10

1962(a), (b), & (c); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); BancOklahoma Mortgage Corp. v. Capital Title Co., 194 F.3d 1089, 1100 (10th Cir. 1999).  Both mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, are predicate acts that form a basis for liability under RICO.  18 U.S.C. §1961(1)(B).  The elements of mail fraud are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations or promises; (2) an intent to defraud; and (3) use of the mails to execute the scheme.  See United States v. Welch, 327 F.3d 1081, 1104 (10th Cir. 2003); United States v. Haber, 251 F.3d 881, 887 (10th Cir. 2001); 18 U.S.C. § 1341.  The first and second elements of federal mail and wire fraud are identical.  The third element of wire fraud is use of interstate wire or radio communications to execute the scheme.  See Welch, 327 F.3d at 1104; United States v. Smith, 133 F.3d 737, 742 (10th Cir. 1997); 18 U.S.C. § 1343.  The federal mail and wire fraud statutes do not purport to reach all frauds, but only those in which the use of the mails or wires "is a part of the execution of the fraud."  Schmuck v. United States, 489 U.S. 705, 710, 109 S. Ct. 1443 (1989).  To be part of the execution of the fraud, the use of the mails or wires need not be essential to the scheme.  Id.  The mailing need only be "incident to an essential part of the scheme" or "a step in the plot."  Id. 499 U.S. at 711-12, 109 S. Ct. 1443.

A.     Particularity

Under Rule 9(b), plaintiffs must allege with particularity each element of a RICO violation and its predicate acts of racketeering, a requirement which is justified by the threat of treble damages and injury to reputation.  See Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 989 (10th Cir. 1992).  Racketeering activity is defined as any act which is indictable under title 18 U.S.C. §§ 1341 (mail fraud) or 1343 (wire fraud).  Skeet v. Sears, Roebuck & Co., 760 F. Supp. 872, 875 (D. Kan. 1991) (citing 18 U.S.C. §1961(1)).  Rule 9(b) may be somewhat relaxed where numerous

11

representations are involved or where the responding party clearly is provided notice of the circumstances of the alleged fraud.  See VNA Plus, Inc. v. Apria Healthcare Group, Inc., 29 F. Supp.2d at 1263.  To determine what constitutes fraud under Sections 1341 and 1343, the Tenth Circuit looks to state common law.  See BancOklahoma, 194 F.3d at 1103 (applying Missouri fraud elements to determine whether defendants violated Sections 1341 and 1343).  In Kansas, the elements of common law fraud are (1) false representations made as statements of existing and material fact; (2) representations known to be false by the party making them or recklessly made without knowledge concerning them; (3) representations intentionally made for the purpose of inducing another party to act upon them; (4) reasonable reliance on the representations by the other party; and (5) damages.  Kelly v. VinZant, 287 Kan. 509, 515, 197 P.3d 803, 808 (Kan. 2008).

Plaintiffs have met their burden under Rule 9(b) to plead fraud with particularity.  Plaintiffs allege that defendants materially misrepresented fat, calories and *POINTS* on the Weight Watchers Menu.  Id. at 10.  Plaintiffs allege that Applebee's and DineEquity maintain a web site which advertises the menu and that Weight Watchers markets the menu through its web site.  See First Amended Complaint (Doc. #42) at 2, 8.  Plaintiffs assert that defendants jointly marketed the menu by way of a joint press release.  Id. at 7.  Plaintiffs allege that plaintiffs ate meals from the menu on at least 50 occasions between February 2008 and February 2009 after reading the menu.  Id. at 12.  Taking these allegations as true, plaintiffs have alleged a scheme to defraud, including specific acts of mail and wire fraud that constitute the predicate acts of the alleged RICO violation.[9]

---

[9]     Plaintiffs' mail fraud allegations are almost identical to the mail fraud claims in a case cited by both parties, Miller v. Basic Research, Inc., No. 07-CV-871, 2008 WL 4755787 (D. Utah, Oct. 27, 2008).  Like the Miller plaintiffs, plaintiffs here alleged a specific period of time (within a range of a few months) where they entered Applebee's restaurants and read the menu items

(continued...)

B.      Enterprise

Plaintiffs allege that defendants conducted an "association-in-fact" enterprise, demonstrated by a patterns of racketeering consisting of multiple acts of mail and wire fraud.  Defendants argue that the alleged "association-in-fact" does not constitute an enterprise under RICO.  Defendants argue that a licensing agreement is not a RICO enterprise.  In arguing these points, defendants rely heavily on United States v. Smith, 413 F.3d 1253 (10th Cir. 2005), and 800537 Ontario, Inc. v. Auto Enters., Inc., 113 F. Supp.2d 1116 (E.D. Mich. 2000).[10]

On July 27, 2009, in United States v. Hutchinson, 573 F.3d 1011, 1021-1022 (10th Cir. 2009), the Tenth Circuit abrogated Smith and adopted a recent Supreme Court decision which redefined the elements of a RICO enterprise.  See Boyle v. United States, 129 S. Ct. 2237 (2009). In Boyle, the Supreme Court announced a new test for determining whether a group has sufficient structure to qualify as an association-in-fact enterprise.  Under this test, a group must have (1) a purpose, (2) relationships among those associated with the enterprise and (3) longevity sufficient to permit the associates to pursue the purpose of the enterprise. 129 S. Ct. at 2244.  As to "purpose,"

---

[9](...continued)
that were distributed through the mails. These claims are almost identical to the facts in Miller, where defendants allegedly used the mails to send advertisements to stores who distributed the supplements in question.

[10]      In Smith, the Tenth Circuit held that to distinguish a RICO enterprise from a pattern of racketeering activity, the government must prove the following: (1) the existence of a decision-making framework or mechanism for controlling the group, (2) various associates functioning as a continuing unit and (3) for that the enterprise, an existence separate and apart from the pattern of racketeering activity.  See 413 F.3d at 1266-67.
     In Ontario, the United States District Court for the Eastern District of Michigan held that plaintiffs did not show that two importers had associated for the common purpose of defrauding a dealership when the importers had a business relationship in which one importer handled importations for the other.  See 800537 Ontario Inc., 113 F. Supp.2d 1116, 1122.

members of the group must share the "common purpose of engaging in a course of conduct." Id. at 2243. As to the "relationships," members of the group must not only share a common purpose, they must have "interpersonal relationships" aimed at effecting that purpose, i.e. they must have "joined together" to advance "a certain object" or engage in a course of conduct. Id. at 2244. As to longevity, though "nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence," id. at 2245, the group must associate on the basis of its shared purpose for a "sufficient duration to permit an association to 'participate' in the affairs of the enterprise through 'a pattern of racketeering activity.'" Id. (quoting 18 U.S.C. § 1962).

Under Boyle, plaintiffs have sufficiently alleged a RICO enterprise. Plaintiffs have alleged that the purpose of the enterprise was to market and sell meals advertised as healthier fare while simultaneously misrepresenting their fat, calories and *POINTS*. See Amended Complaint (Doc. #42) at 3. Plaintiffs allege the relationship by contending that in 2003, Applebee's and Weight Watchers entered into a multi-year contract to develop a health conscious menu aimed at providing casual dining alternatives for those seeking to eat healthier and lose weight. Id. at 6-7. Plaintiffs also allege a relationship by contending that defendants individually and jointly marketed the menu since 2003. Id. at 7-10. Since plaintiffs allege that defendants have carried out the alleged fraudulent activity since 2003, they also allege longevity.

Defendants' reliance on Ontario is misplaced. There, the district court held that by itself, a commercial contract was not enough to establish a RICO enterprise. It noted that plaintiffs' amended complaint did not support a conclusion that defendants had participated in joint decisionmaking regarding the alleged enterprise or any type of hierarchy beyond their contractual relationship. See Ontario, 113 F. Supp.2d at 1123. Here, plaintiffs have alleged more than a

14

contractual relationship.  Plaintiffs allege that both Applebee's and Weight Watchers have marketed the menu and that both parties have made material misrepresentations about it.  In light of <u>Boyle</u>, the hierarchy requirements discussed in <u>Ontario</u> are not relevant.  <u>See Boyle</u>, 129 S. Ct. at 2251.

### C.    Operation And Management

Defendants argue that plaintiffs have not alleged the requisite level of control to state a RICO claim.  The Supreme Court has adopted the "operation or management" test to determine whether a defendant has "participated in the conduct" of the affairs of a RICO enterprise.  <u>See</u> <u>BancOklahoma</u>, 194 F.3d at 1100-1101 (citing <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 113 S. Ct. 1163, 1170-73 (1993)).  To be liable, defendants must have participated in the operation or management of the RICO enterprise.  <u>Id.</u>  Although it is not necessary for defendants to have had "significant" control, <u>id.</u> at 179 n. 4, 113 S.Ct. at 1170 n. 4, defendants must have some part in directing the affairs of the enterprise.  <u>Reves</u>, 507 at 178-80, 113 S.Ct. at 1170.  The word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the affairs of the enterprise, just as the phrase "directly or indirectly" makes clear that while some part in directing the enterprise's affairs is required, RICO liability is not limited to those with a formal position in the enterprise.  <u>Reves</u>, 507 U.S. at 179, 113 S.Ct. at 1170.  Outsiders who are associated with a RICO enterprise and participate in its operation or management may be liable under Section 1962(c).  <u>BancOklahoma</u>, 194 F.3d at 1101.  In <u>BancOklahoma</u>, the Tenth Circuit held that plaintiff failed to establish that defendants participated in the conduct of the alleged RICO claim when they did nothing more than provide their regular services.  <u>Id.</u>

Here, plaintiffs allege that Applebee's and Weight Watchers conspired to conduct the affairs of an enterprise through a pattern of racketeering activity consisting of multiple acts of mail fraud

and wire fraud.  See Amended Complaint (Doc. #42) at 22.  Plaintiffs further allege that defendants committed numerous overt acts, including the use of the interstate wires and mail.  Id.  Plaintiffs provide specific details as to the content, manner and time of the alleged misrepresentations and how they pertained to the alleged scheme to defraud.  See id. at 19-22, 25-26.  Taken as true, these facts sufficiently allege that Applebee's and Weight Watchers managed the alleged RICO enterprise by way of promotion and marketing.

        D.      <u>Injury</u>

Defendants argue that plaintiffs have not alleged causation or injury and that they therefore lack standing to sue under RICO.  Specifically, defendants argue that plaintiffs have not alleged that they paid more for their meals than they would have paid for similar meals elsewhere and that they therefore lack the requisite injury to their business or property under RICO.  Plaintiffs allege, however, that they would never have eaten from defendants' menu if they had known the nutritional value of the meals therein.

For private individuals, standing under RICO requires that plaintiffs be injured in their business or property.  Tal v. Hogan, 453 F.3d 1244, 1254 (10th Cir. 2006).  Plaintiff need not suffer a "racketeering injury" as opposed to an injury resulting from the predicate acts themselves.  See Condict v. Condict, 826 F.2d 923, 927 (10th Cir. 1987).  In arguing that plaintiffs must allege a premium for the meals in question, defendants cite McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 228 (2d Cir. 2008), which held that plaintiffs could only establish a RICO injury by demonstrating that because of defendants' misrepresentations, they paid more for light cigarettes than they otherwise would have.  Plaintiffs are unlike the McLaughlin plaintiffs, who would have purchased cigarettes regardless of the alleged misrepresentations.  Here, plaintiffs allege that but for

defendants' misrepresentations, they would not have purchased food from the menu.  Taking these allegations as true, plaintiffs have stated a RICO injury.

E.      Conspiracy

Defendants argue that plaintiffs have not plead a conspiracy in violation of 18 U.S.C. § 1962(d).[11]  Specifically, defendants argue that plaintiffs' conspiracy allegation is merely a formulaic recitation of the elements and does not contain factual allegations of how each defendant conspired to violate RICO.

To prevail under Section 1962(d), plaintiffs must prove that each defendant conspired to commit the substantive RICO offense, in that each defendant agreed to commission of the predicate acts and was aware that others had done likewise.  Sunbird Air Servs., Inc. v. Beech Aircraft Corp., No. 89-2181-V, 1992 WL 135021, at *5 (D. Kan. May 29, 1992).  Plaintiffs' allegations of numerous predicate acts suffice as allegations of overt acts in furtherance of the conspiracy.  See Raymark Indus., Inc. v. Stemple, 714 F.Supp. 460, 475 (D. Kan. 1988).

After reviewing the predicate acts alleged by plaintiffs and accepting these allegations as true, the Court concludes that plaintiffs' allegations of conspiracy are sufficient.  If accepted as true, the scope and nature of the alleged enterprise and racketeering activity give rise to an inference that defendants conspired to achieve their purposes and were aware that other defendants were participating in the alleged conspiracy.  See Sunbird, 1992 WL 135021, at *5.  Defendants' motion to dismiss plaintiffs' RICO conspiracy claim is therefore denied.

F.      DineEquity

--------

[11]      18 U.S.C. § 1962(d) provides that it shall be unlawful for any person to conspire to violate any of the provisions enumerated in the "prohibited activities" section (Section 1962) of the RICO statute.

Plaintiffs allege that beginning in 2007, DineEquity violated RICO by entering into the scheme to defraud which began in 2003.  Defendants argue that plaintiffs have not alleged an independent basis for RICO liability as to DineEquity.  In support of this argument, defendants cite Waddell & Reed Financial, Inc. v. Torchmark Corp., 223 F.R.D. 566, 600 (D. Kan. 2004), in which this Court held that "absent some allegation that by using a subsidiary, the parent corporation was able to more easily commit or conceal the fraud, a subsidiary is not considered an 'enterprise' separate from the parent corporation."

While the Court holds that plaintiffs have alleged a RICO violation by Applebee's and Weight Watchers, plaintiffs have not alleged a factual basis for their conclusory allegation that DineEquity "operated the enterprise by virtue of its ownership of Applebee's."  See Plaintiffs' Consolidated Opposition To Defendants' Motion To Dismiss (Doc. #64) filed April 6, 2009 at 38.  Even if true, this summary allegation is insufficient to establish plaintiffs' RICO claims against DineEquity and is therefore dismissed.

### III.    State Law Claims

Plaintiffs allege that defendants violated the KCPA, K.S.A. § 624 et seq., and conspired to engage in deceptive acts and practices in violation of K.S.A. § 50-626(a).  See Amended Complaint (Doc. #42) at 24.  Plaintiffs further allege that defendants were unjustly enriched by their deceptive acts and practices, and seek to disgorge the proceeds of the meals which they purchased from defendants.  Id. at 26.  Defendants argue that the KCPA claims must fail because plaintiffs have not alleged that any relevant consumer transaction occurred in Kansas.  See Memorandum Of Points And Authorities In Support Of Defendants' Motion No. 3 (Motion To Dismiss State Law Claims And To Strike Civil Penalties Demand) (Doc. #57) filed February 27, 2009 at 3.  Defendants further

argue that the Court should dismiss plaintiffs' claims for unjust enrichment, conspiracy and civil penalties because plaintiffs have not sufficiently alleged any underlying KCPA claims.  Id. at 5-6.

The KCPA is construed to protect consumers from suppliers who commit deceptive and unconscionable practices.  See Williamson v. Amrani, 283 Kan. 227, 232 (Kan. 2007) (citing § 50-623).  It applies to "consumer transactions," which it defines as either "a sale . . . within this state . . . to a consumer" or "a solicitation by a supplier with respect to" such a sale.  K.S.A. § 50-624(c).  When a consumer transaction occurs outside Kansas, the KCPA does not provide a nationwide basis for liability against Kansas companies, based solely upon their presence in this state.  Montgomery v. Sprint Spectrum, L.P., No. 07-2227-JTM, 2007 WL 3274833, at *6 (D. Kan. Nov. 6, 2007); see also Kluin v. Am. Suzuki Motor Corp., 274 Kan. 888, 903, 56 P.3d 829, 839 (Kan. 2002) (under KCPA, defendant must engage in "consumer transaction" in Kansas).  Furthermore, deceptive trade practices under the KCPA must be alleged with specificity consistent with Rule 9(b), Fed. R. Civ. P.  Burton v. R.J. Reynolds Tobacco Co., 884 F. Supp. 1515, 1524 (D. Kan. 1995).

As noted, defendants argue that plaintiffs have not alleged a "consumer transaction" within the State of Kansas.  Doc. #57 at 3.  Specifically, defendants argue that the plaintiffs only allege that they ate Applebee's meals in the "Kansas City area," which may or may not include the State of Kansas.  Plaintiffs respond that on a motion to dismiss, even under the heightened pleading standards of Rule 9(b),[12] the Court must draw all reasonable inferences in their favor.  Specifically,

---

[12]     Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  Plastic Packaging Corp. v. Sun Chem. Corp., 136 F.Supp.2d 1201, 1203 (D. Kan. 2001).  In other words, plaintiffs must set out the who, what, where and when of the alleged fraud.  Id.  A complaint
(continued...)

plaintiffs argue that the Court should infer that the "Kansas City area" includes Kansas.

Here, plaintiffs do not allege consumer transactions which occurred in Kansas. Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of actionable misconduct, i.e., that transactions in the "Kansas City area" may have occurred in Kansas, the complaint has alleged – but not "shown" – that plaintiffs are entitled to relief. Iqbal, 129 S. Ct. at 1950.

Plaintiffs allege that defendants made solicitations in Kansas because Applebee's maintained its web site in Kansas. See Doc. #64 at 42. Defendants argue that the complaint does not allege solicitation in Kansas, however, because plaintiffs do not contend that they visited the web site. See Doc. #72 at 4. Defendants also argue that maintaining a passive web site in Kansas does not constitute solicitation under the KCPA. Id. at 6.

Solicitation may subject a supplier to the KCPA, regardless whether it results in a sale, lease or other disposition of property within the State of Kansas. See Watkins v. Roach Cadillac, Inc., 7 Kan. App. 2d 8,13, 637 P.2d 458, 463 (Kan. Ct. App. 1981). Solicitation in Kansas may result where a substantial number of statements about the product in question are made in Kansas. See Kluin v. Am. Suzuki Motor Corp., 274 Kan. 888, 901, 56 P.3d 829, 838 (Kan. 2002). In Watkins, the Kansas Supreme Court found a consumer transaction in Kansas where defendant allowed plaintiff to test drive a car in Kansas, defendant parked the car on the Kansas side of defendant's lot and defendant made a substantial number of statements about the vehicle in Kansas. Watkins, 7

---

[12](...continued)
that completely fails to mention the location where the misrepresentations were made is insufficient to satisfy Rule 9(b). See Koch v. Koch Indus., Inc., 203 F.3d 1202, 1237 (10th Cir. 2000); see also Shaffer v. Eden, 209 F.R.D. 460, 463 (D. Kan. 2002) (allegations that misrepresentations made in "employees' meetings" insufficient to disclose place at which meetings held).

Kan. App. 2d at 13, 637 P.2d at 463.

While Applebee's use of the Weight Watcher's menu may constitute a solicitation in Kansas, similar to that in <u>Watkins</u>, plaintiffs have not alleged that Applebee's solicited *them* in Kansas. Therefore they have not alleged solicitation in violation of Section 50-626.[13]

In summary, plaintiffs have not stated a transaction or solicitation claim and their KCPA claims – including their claims for unjust enrichment, conspiracy and civil penalties must be dismissed.[14]

**IV.    Motion To Dismiss Weight Watchers**

Weight Watchers asks the Court to dismiss all claims against it because plaintiffs have failed to satisfy Rule 9(b) by stating with particularity how, when and why Weight Watchers committed the alleged fraud.  <u>See</u> <u>Motion To Dismiss No. 4: Motion To Dismiss Defendant Weight Watchers International, Inc.</u> (Doc. #58) filed February 27, 2009. Defendants further argue that Weight Watchers is merely a trademark licensor and therefore not liable for the alleged misrepresentations

---

[13]    While plaintiffs go to great lengths in describing the Applebee's and Weight Watcher's web sites, <u>see</u> <u>Amended Complaint</u> (Doc. #42) at 3, 8-9, and generally allege that they relied on defendants' "materially false and fraudulent representations," they do not allege that they relied on the printed version of the menu or the electronic version of the menu when they purchased Applebee's meals, or that defendants solicited them in that manner.  <u>Id.</u> at 13.

[14]    An action for unjust enrichment is not an independent cause of action such as an action for personal injury.  <u>Integrity Mgmt. Int'l., Inc. v. Tombs & Sons, Inc.</u>, 836 F.2d 485, 495 (10th Cir. 1987).  Because plaintiffs have not alleged an underlying cause of action under the KCPA, their unjust enrichment claim must be dismissed.

The elements of civil conspiracy in Kansas are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.  <u>See</u> <u>Citizens State Bank v. Gilmore</u>, 226 Kan. 662, 672, 603 P.2d 605, 613 (Kan. 1979).  Again, because plaintiffs have not alleged a valid KCPA claim, their claim that defendants conspired to violate the KCPA must be dismissed.

Similarly, because plaintiffs have not alleged a violation of the KCPA, their claim for civil penalties under the KCPA must be dismissed.

or for any violation of the KCPA or RICO.  Plaintiffs respond that they allege that Weight Watchers independently made fraudulent misrepresentations in violation of the KCPA and other state laws. Plaintiffs also argue that they sufficiently allege that Applebee's acted as the agent of Weight Watchers when it made misrepresentations, and that Weight Watchers is vicariously liable for those misrepresentations.

The Court need not reach defendants' argument that Weight Watchers is not liable as a trademark licensor.  As stated above, because plaintiffs have not alleged KCPA claims with particularity, those claims against all defendants (including Weight Watchers) must be dismissed. Furthermore, the Court finds that plaintiffs have sufficiently alleged that defendants (including Weight Watchers) violated RICO.  Plaintiffs do not seek to hold Weight Watchers liable as a mere licensor, and defendants' argument in that regard is moot.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss Complaint on Grounds of Federal Preemption (Doc. # 51) and Motion to Dismiss State Law Claims and to Strike Civil Penalties Demand (Doc. # 56), both filed on February 27, 2009, be and hereby are **SUSTAINED**.

**IT IS FURTHER ORDERED** that defendants' Motion to Dismiss for Failure to State a Claim Regarding Alleged RICO Violations (Doc. # 54) filed February 27, 2009, be and hereby is **SUSTAINED** as to DineEquity and **OVERRULED** as to Applebee's and Weight Watchers.

**IT IS FURTHER ORDERED** that defendants' Motion To Dismiss No. 4: Motion To Dismiss Defendant Weight Watchers International, Inc. (Doc. #58) filed February 27, 2009 be and hereby is **SUSTAINED** as to plaintiffs' KCPA claims and **OVERRULED** as to plaintiffs' RICO claims.

22

**IT IS FURTHER ORDERED** that <u>Defendants' Supplemental Request For Judicial Notice</u>

<u>In Support Of Their Motion To Dismiss No. 1 (Federal Preemption)</u> (Doc. #70) filed May 6, 2009

be and hereby is **SUSTAINED**.

Dated this 25th day of September, 2009 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Court